Delbert C. COPLEY and Dicie
Copley, Plaintiffs,

v.

RONA ENTERPRISES, INC. and Capital
Savings & Loan Co., Defendants.

Civ. A. No. C-2-74-480.

United States District Court,
S. D. Ohio, E. D.

June 14, 1976.

Phillip M. Walther, Columbus, Ohio, for plaintiffs.

Joel H. Mirman, Edward F. Chuha, Roland T. Gilbert, Columbus, Ohio, for defendants.

## OPINION

DUNCAN, District Judge.

This is a civil action brought pursuant to Chapter 1 of Title I of the Consumer Credit Protection Act of 1968, known as the Truth in Lending Act, Pub.L. No. 90–321, 82 Stat. 146, set out at 1968 U.S.Code and Admin. News, p. 176 *et seq.*, as amended, 15 U.S.C. § 1601 *et seq.* Under 15 U.S.C. § 1640(e), the United States District Courts have jurisdiction, concurrent with that of "any other court of competent jurisdiction," to adjudicate civil actions brought under the Act within one year of the date of the alleged violation. The parties have submitted certain issues in this case for a determination upon stipulated facts. The questions presented include whether an April 24, 1974, purchase agreement signed by plaintiffs and by defendant Rona Enterprises, Inc. violated the disclosure requirements of the Act, and whether adjudication of the state law claims asserted in this case would be a proper exercise of this Court's pendant jurisdiction.

The stipulations of the parties include the following:

(1) Plaintiffs entered into a "purchase agreement" (Exhibit 1) on April 24, 1974 for the purchase of a new Homette mobile home.

(2) The signatures appearing on the "purchase agreement" are genuine, and the attached copy of the "purchase agreement" is a true, unaltered copy thereof.

(3) The "retail installment contract and security agreement" (Exhibit 2) dated May 21, 1974 does not contain the genuine signature of either of the plaintiffs.

(4) The monetary figures appearing on Exhibit 2 are exactly the same as on Exhibit 1.

(7) Rona assigned Exhibit 2 to Capital, representing it to be a document signed by plaintiffs in connection with the purchase of the same mobile home.

(8) Capital had no knowledge of the existence of Exhibit 1, or of the fact that the signatures on Exhibit 2 were not genuine until after the filing of the within action.

(10) Plaintiffs have made three payment[s] of $85.84 each, and have made no payments to Capital since _____, and the books and records of Capital show that there is due on said account the sum of $3,785.37.

(11) Plaintiffs have lived in said mobile home since May, 1974 and continue to live in said mobile home as of this date.

(12) On July 24, 1974, plaintiffs delivered to defendants Rona and Capital a letter in which they asserted a right to rescind due to the alleged failure on the part of Rona Enterprises, Inc. to comply with those provisions of the Truth in Lending Act.

(13) Rona Enterprises has not returned the down payment or payments made by plaintiffs, and both Rona and Capital allege that there is no right of rescission in this transaction.

(16) The term of the credit life insurance issued in connection with the transaction which is the subject of this suit runs for 60 months, which term equals the length of the obligation allegedly set forth in Exhibits 1 and 2.

(17) Rona Enterprises, Inc. is an Ohio corporation and is a dealer in mobile homes. In the ordinary course of its business, Rona regularly offered to assist in the obtaining of consumer credit extended by another company. In these instances, Rona prepared the contract documents and assigned them to various companies which extended credit to the Rona customers.

(18) Capital Finance Corporation· is a corporation authorized to do business in the State of Ohio, and regularly extends and offers to extend credit in the ordinary course of its business, charging a finance charge when credit is extended by it.

The April 24, 1974, agreement to which plaintiffs and defendant Rona are signato-

ries is styled "Form 100 Purchase Agreement UCC § 2–201." The document provides that "subject to the terms and conditions stated on both sides of this agreement seller [defendant Rona] agrees to sell and the purchaser [plaintiffs Delbert and Dicie Copley] agrees to purchase the following described property: [a] Homette [mobile home] Model 264114 FRB." Rona signed on a line under which appeared the following language: "Approved, Subject to acceptance of financing by bank or finance company." The first numbered paragraph on the reverse of the document is underlined and contains the following language:

In the event the transaction referred to in this order is not a cash transaction, the purchaser herein before, or at the time of delivery of the trailer, mobilehome or vehicle ordered, and in accordance with the terms and conditions of payment indicated on the face of this order, will either execute a retail installment contract, security agreement, or such other form of agreement as may be required by law. Title to said equipment shall remain in the Seller, until the agreed purchase price therefor is paid in full in cash, or a time payment contract has been executed, and accepted by a bank or finance company; thereupon title passes to purchaser even though actual delivery may be made at a later date.

The fifth numbered paragraph on the same side of the document is as follows:

Upon failure or the refusal of the purchaser to complete said purchase within 30 days of contract date, or an agreed extension thereof for any reason (other than cancellation on account of increase in price) the cash deposit may have such portion of it retained as will reimburse

the dealer for expenses and other losses including attorney fees occasioned by purchaser's failure to complete said purchase. In the event a used car, trailer or mobilehome has been taken in trade, the purchaser hereby authorizes the dealer to sell said property, at public or private sale, and to deduct from the proceeds thereof a sum equal to the expenses and losses incurred, or suffered, by the dealer by reason of purchaser's failure to complete the transaction. Dealer shall have all the rights of a seller, upon breach of contract, under the Uniform Commercial Code 2–708, 2–710, 2–718, of the Uniform Sales Act (as applicable) provided the total amount of liquidated damages shall not exceed twenty (20%) percent of the cash sales price or $500 (whichever is lower) except in Wisconsin in which Sec. 218.01 with a penalty no greater than 5% of vehicle cash price shall prevail.

The stipulations of the parties indicate that the retail installment contract and security agreement of May 21, 1974, was never signed by plaintiffs, although it was "assigned" by defendant Rona to defendant Capital Savings & Loan Company. Defendant Rona insists that in the absence of some evidence of indebtedness, the April 24, 1974, transaction did not fall within the terms of the disclosure requirements of the Act.

The complaint was filed on October 15, 1974, and concerns an April 24, 1974, purchase agreement. After the complaint was filed in this Court, the Truth in Lending Act was amended[1] by Titles III and IV of an Act of October 28, 1974, Pub.L. No. 93–495, 88 Stat. 1500, set out at 1974 U.S. Code Cong. and Admin.News, pp. 1724, 1737 et seq. Under §§ 308 and 416 of the 1974 amendments, most changes in the Act are

1. The act was earlier amended by Title V of an Act of October 26, 1970, Pub.L. No. 91–508, 84 Stat. 1114, set out at 1970 U.S.Code Cong. and Admin.News, pp. 1301, 1314 et seq. These amendments concern credit card transactions and are not pertinent to the present case; the amendments added six subsections to 15 U.S.C. § 1602, and added 15 U.S.C. §§ 1642–44 to the statute.

Recent amendments to the statute are an Act of February 27, 1976, Pub.L. 94–222, 90 Stat.

197, set out in 1976 U.S.Code Cong. and Admin.News No. 2 [amending prospectively 15 U.S.C. §§ 1602, 1640(f) and 1666f], and Acts of March 23, 1976, Pub.L. No. 94–239, 90 Stat. 251 [amending prospectively 15 U.S.C. §§ 1691–1691f, which concern equal credit opportunity] and Pub.L. No. 94–240, 90 Stat. 257 [adding 15 U.S.C. § 1601(b) and §§ 1667–1667e, which concern the leasing of automobile and other durable goods for consumer use], set out in 1976 U.S.Code Cong. and Admin.News No. 3.

effective either upon enactment or one year thereafter, and are therefore not pertinent to the resolution of the issues presented in this case. Pursuant to § 408(e) of the 1974 amendments, the modifications contained in §§ 406, 407 and 408 of the amendments shall apply in determining the liability of any person under chapter 2 [15 U.S.C. §§ 1631–44] or 4 [15 U.S.C. §§ 1666–1666j] of the Truth in Lending Act, unless prior to the date of enactment of this Act such liability has been determined by final judgment of a court of competent jurisdiction and no further review of such judgment may be had by appeal or otherwise.

§ 408 amended 15 U.S.C. § 1640(a), which governs civil liability under the Act, while §§ 406 and 407 added subsections (f) and (g) to 15 U.S.C. § 1640. The law which the Court must apply in this case is therefore the Truth in Lending Act as it existed upon enactment in 1968, except that the Court will apply 15 U.S.C. § 1640 as amended by §§ 406–408 of the Act of October 28, 1974.

■ The April 24, 1974, purchase agreement signed by the Copleys and by defendant Rona is by its terms a contract for the extension of credit. The face of the agreement reflects a trade-in allowance of $1,000.00, and a cash down payment of $4,000. It reflects an unpaid balance of $3700.00, a finance charge of $1225.89, a charge of $154.51 for credit life insurance, a total deferred payment price of $10,150.40, and an annual percentage rate of 11.27%. While Rona's "approval" of the agreement is expressly contingent upon acceptance of financing, the purchasers' responsibility under the agreement is unconditional. The first paragraph on the reverse side of the agreement provides that the purchaser "before, or at the time of delivery of the trailer, mobilehome or vehicle ordered, *and in*

*accordance with the terms and conditions of payment indicated on the face of this order,* will either execute a retail installment contract, security agreement, or such other form of agreement as may be required by law." The fifth paragraph provides that the purchasers are liable in damages to the seller if they fail to "complete the purchase" within thirty days, or an agreed extension.

■ It is apparent, then, that under the terms of the April 24, 1974, agreement, plaintiffs contractually bound themselves not only to purchase the mobile home, but also to purchase it on the credit terms set out on the face of the purchase agreement. Rona Enterprises, Inc. retained for itself the right to withdraw its agreement to sell, if financing was unavailable, but Rona left the purchasers no independent contractual right to escape the credit terms of the purchase agreement. Rona secured from plaintiffs an unconditional promise to accept specific credit terms; such a promise renders a contract one for the extension of credit. 15 U.S.C. § 1638(b) provides that disclosures concerning sales not under open end credit plans "shall be made before the credit is extended." The United States Court of Appeals for the Sixth Circuit has stated,

It thus appears that a credit transaction which requires disclosure under the Act is completed when the lender and borrower *contract for the extension of credit.* The disclosures must be made sometime before *this event* occurs.

*Wachtel v. West,* 476 F.2d 1062, 1065 (6th Cir.), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973) (emphasis supplied). One court has stated in the context of 15 U.S.C. § 1639(b)[2] that "disclosure [is] necessary prior to the creation of the contractual relationship arising from the commitment

---

2. 15 U.S.C. § 1639(b) is nearly identical to 15 U.S.C. § 1638(b):

Except as otherwise provided by this part, the disclosures required under [§ 1639(b) has the word "by" instead of "under"] subsection (a) of this section shall be made before the credit is extended, and may be made by disclosing the information in the contract [§ 1639(b) has the word "note" instead of "contract"] or other evidence of indebtedness to be signed by the purchaser [§ 1639(b) has the word "obligor" instead of "purchaser"]. See generally *Stavrides v. Mellon National Bank & Trust Company,* 353 F.Supp. 1072, 1078–79 (W.D.Pa.), *aff'd,* 487 F.2d 953 (3d Cir. 1973).

to make a loan and not merely that relationship arising from the contract of indebtedness." *Postow v. Oriental Building Association*, 390 F.Supp. 1130, 1136–37 (D.D.C. 1975) (footnotes omitted). The rule must be taken one step further in the present case: Disclosure is necessary prior to the time that a purchaser contractually binds himself to accept particular credit terms.[3] See also Federal Reserve Board Letter No. 623, August 9, 1972, CCH *Consumer Credit Guide* ¶ 30,872:

> Staff believes that where the sale is conditioned on the seller arranging specific financing whose terms are known to the seller, so that the financing is an integral part of the sale to the extent that a contractual relationship has been created between the creditor and a customer with regard to that financing, "consummation" of the credit transaction may have occurred at the time of execution of the sale documents and disclosures should be made at that point.

Such letters "may not be legally binding but should be treated as persuasive." *Bissette v. Colonial Mortgage Corporation of D. C.*, 155 U.S.App.D.C. 360, 477 F.2d 1245, 1246 (1973).[4]

The Court further concludes from the stipulated facts that the defendants are "creditors" within the meaning of 15 U.S.C. § 1602(f), and that the April 24, 1974, purchase agreement was entered into by the parties "in connection with a consumer credit sale not under an open end credit plan" within the meaning of 15 U.S.C. § 1638(a), see 15 U.S.C. § 1602(g)–(i).

■ The Court further concludes that defendant Rona "fail[ed] to comply with [a] requirement imposed" by the Truth in Lending Act, see 15 U.S.C. § 1640(a) as amended, when it disclosed the annual percentage rate of the April 24, 1974, transaction as 11.27%. 15 U.S.C. § 1638(a)(7) required Rona to disclose the finance charge expressed as an annual percentage rate. 15 U.S.C. § 1606 defines annual percentage rate as a function of the finance charge and the unpaid balances of the amount financed.[5] 15 U.S.C. § 1605(b) in turn requires that in calculating the finance charge, credit life insurance premiums *shall* be included in the *finance charge* (and not as part of the amount financed) *unless* (1) the creditor clearly discloses in writing to the debtor the fact that coverage of the debtor by such insurance is not a factor in the extension of credit, *and* (2) the debtor gives specific affirmative written indication of his desire to obtain insurance. Regulation Z, 12 C.F.R. § 226.4(a)(5)(ii) (1975) interprets 15 U.S.C. § 1605(b)(2), and requires that the creditor who wishes not to disclose credit life premiums as part of the finance charge must obtain the debtor's "specific dated *and separately signed* affirmative written indication" that he desires the in-

---

**3.** In *Philbeck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255, 1257 n.1 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974), the district court labeled "specious" a contention that a retail buyer's order was a contract to which Truth in Lending disclosures applied. There is no indication in *Philbeck* that the purchaser agreed to accept particular credit terms in signing the retail buyer's order.

**4.** Assuming *arguendo* that credit must actually be extended to a consumer before 15 U.S.C. § 1638(b) comes into play, the stipulations of the parties appear to indicate that Rona procured from Capital Savings & Loan Company credit for plaintiffs sometime after the April 24, 1974, purchase agreement was signed. It does not appear from the record that any disclosures other than those made in the April 24, 1974, document were made prior to the extension of this credit.

**5.** 15 U.S.C. § 1638(a)(6) requires that the amount of the finance charge be disclosed "except in the case of a sale of a dwelling." Assuming that the April 24, 1974, purchase agreement concerned the "sale of a dwelling," defendant Rona was under no duty to disclose the *amount* of the finance charge. The 15 U.S.C. § 1638(a)(7) requirement that the finance charge be disclosed as an annual percentage rate does apply to sales of dwellings as well as other sales; to determine the annual percentage rate under 15 U.S.C. § 1606, it is necessary to compute properly the finance charge under 15 U.S.C. § 1605(b). Thus, while Rona may have been under no duty to disclose the amount of the finance charge, it was under a duty properly to calculate the amount of the finance charge so that it could accurately disclose the finance charge as an annual percentage rate, as required by 15 U.S.C. § 1638(a)(7).

surance. The April 24, 1974, purchase agreement did contain a "certification" by the purchasers that "the purchase of . . the insurance as described has been voluntary." There was, however, no clear disclosure in writing to the debtor as required by 15 U.S.C. § 1605(b)(1), and certainly no "separately signed affirmative written indication" of desire to purchase, as required by 12 C.F.R. § 226.4(a)(5)(ii) (1975). Under 15 U.S.C. § 1605(b) and Regulation Z, then, defendant Rona was required to disclose the cost of the credit life insurance as part of the finance charge. Including it as part of the amount financed resulted in an annual percentage rate of 11.27%, while the annual percentage rate if the insurance premium is excluded from the amount financed and included in the finance charge is nearly 13%. Thus, defendant Rona violated the Act by failing to disclose the true annual percentage rate, as required by 15 U.S.C. § 1638(a)(7). Put differently, it violated the Act by failing to compute the finance charge in accordance with 15 U.S.C. § 1605(b).[6]

■ Plaintiffs also contend that Rona failed to comply with the Act when it did not disclose the term of the credit life insurance, and when it failed to disclose a right of rescission. The Court accepts neither of these contentions. Stipulation 16 provides that the term of the credit life was identical to that of the loan itself; the courts are agreed that in such a case, the term of the credit life insurance need not be separately disclosed. See *Philbeck v. Timmers Chevrolet, Inc.*, 499 F.2d 971, 981 (5th Cir. 1974); *Mason v. General Finance Corporation of Virginia*, 401 F.Supp. 782, 791 (E.D.Va. 1975); *Porter v. Household Finance Corpo-*

*ration of Columbus*, 385 F.Supp. 336, 346 (S.D.Ohio 1974). And in asserting a right to rescind in the present case, plaintiffs run afoul of the plain import of the language at 15 U.S.C. § 1635(e): "This section [concerning rescission] does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling." Plaintiffs are in the rather uncomfortable position of arguing, on the one hand, that the mobile home is "real property which is used or is expected to be used as the residence of the person to whom credit is extended" within the meaning of 15 U.S.C. § 1635(a), while insisting, on the other hand, that the mobile home is not "dwelling" within the meaning of 15 U.S.C. § 1635(e). I hold that if the mobile home is real property under 15 U.S.C. § 1635(a), it is also a "dwelling" under § 1635(e).[7] Since the loan involved a purchase money mortgage of the mobile home, no right of rescission ever arose, and none need have been disclosed.

■ The remaining question posed by the litigants concerns this Court's power to hear pendent state claims raised by plaintiffs. Congress deemed open disclosure of credit costs and terms to be of sufficient importance that it gave each credit consumer the right to initiate a Truth in Lending action in a federal district court. Merely adjudicating the federal claims arising in cases such as this places a substantial burden upon the federal trial courts. I do not believe the Truth in Lending Act provides justification for permitting federal plaintiffs to raise ancillary quarrels concerning such matters as the alleged poor quality of the goods or services purchased. The disclosures imposed by the Act are usually

---

**6.** Plaintiffs' briefs are ambiguous concerning their theory of liability against defendant Capital Savings & Loan Company. Stipulations 7 and 8 clearly indicate that Capital knew only of the May 21, 1974, retail installment contract, which bore forged signatures of the plaintiffs. Plaintiffs do not assert that this document contained any Truth in Lending violation which was apparent on the face of the instrument; see 15 U.S.C. § 1614, which was added with prospective effect by the 1974 amendments.

**7.** The Court does not read the 12 C.F.R. § 226.-2(p) and (y) definitions of "dwelling" and "residence" to have the 15 U.S.C. § 1635 ramifications urged by plaintiffs. If the mobile home in question is "real property in which the customer resides or expects to reside" so as to render it a "residence" within the § 226.2(y) definition, as plaintiffs urge, it would also appear to be "a residential-type structure which is real property and contains one or more family housing units," so as to bring it within the definition of "dwelling" at § 226.2(p).

required before the parties actually begin performance of their contracts; some time lapse will therefore typically occur between the events that are relevant to the federal and state claims. The federal claims often concern fact questions which can be resolved by examining disclosure documents, while state claims such as breach of contract often turn on factual questions which would require a hearing for resolution.[8] Many state courts have jurisdiction under 15 U.S.C. § 1640(e) to hear Truth in Lending cases, and litigants can raise their state claims there as a matter of right.

For the reasons set forth hereinabove, the Court enters the following conclusions: (1) The April 24, 1974, purchase agreement signed by plaintiffs and defendant Rona Enterprises, Inc. was a contract for the extension of credit, such that 15 U.S.C. § 1638 applied to it; (2) Defendant Rona Enterprises, Inc. violated the Truth in Lending Act by failing to include the credit life premium as part of the finance charge expressed as an annual percentage rate; (3) No right of rescission arose as a result of the April 24, 1974, purchase agreement; and (4) The Court will entertain none of the pendent state claims raised by the parties.

---

**8.** Concerning this Court's discretionary power to entertain pendent state claims, see generally *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). This Court does not today foreclose the exercise of pendent jurisdiction in every Truth in Lending case. "There may . . . be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particu-larly strong." *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139. Whether the asserted pendent claims share with the federal claims "a common nucleus of operative fact," 383 U.S. at 725, 86 S.Ct. at 1138, and whether an adjudication of the pendent claims with the federal claims will promote "judicial economy, convenience and fairness to litigants," 383 U.S. at 726, 86 S.Ct. at 1139, are questions which must be resolved on a case-by-case basis.