United States Court of Appeals,

Eleventh Circuit

No. 96-4124.

Anne S. BUCKMAN, on behalf of herself and all others similarly situated, Plaintiff-Appellant,

v.

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, Ace Bonding Company, Defendants-Appellees.

June 20, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-1535-CIV-KING), James Lawrence King, Judge.

Before TJOFLAT, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

In the present case, we determine the applicability of certain consumer protection laws to the practice of bail bonding. Plaintiff says (1) that a bail bond transaction which includes a contingent promissory note and mortgage is subject to the Truth in Lending Act, and (2) that a bail bondsman's attempt to collect on that note is subject to the Fair Debt Collection Practices Act. We hold that the giving of such a note and mortgage as part of a bail bond transaction does not constitute the extension of "credit" subject to the Truth in Lending Act, and that a bail bondsman's later attempt to collect on the note is not covered by the Fair Debt Collection Practices Act. We affirm the judgment of the district court.

I.

Defendant American Bankers Insurance Company ("ABIC") is an insurance company which insures bail bonds put up by Defendant Ace Bonding Company ("Ace"), a bail bond company. Plaintiff Anne Buckman's daughter, Helene Smith, was arrested and incarcerated in a Florida jail. In July 1994, Plaintiff executed an Indemnity Agreement for Surety Bail Bond guaranteeing Smith's appearance on the pending criminal charges. Pursuant to the bail bond agreement, Plaintiff paid an $800 premium on her daughter's $8,000 bond; and, as collateral for the bond, she executed a Contingent Promissory Note and a Mortgage Deed.

The Contingent Promissory Note provides that "[i]t is further agreed and specifically understood between the parties to this Note that there is presently no outstanding loan or debt represented by this Promissory Note," and that it is to secure advances "if and when there is a forfeiture or estreature of the Bond." The Mortgage Deed provides that it is "accepted as collateral for a bail bond." Several months later, Ace informed Plaintiff by letter that Smith had failed to appear for her scheduled court date and that the court had, accordingly, forfeited the bond. The letter also states that the "Surety hereby makes formal demand for payment" and that "Surety intends to pursue any and all remedies the law allows, including but not limited to, executing foreclosure proceedings...."

Plaintiff filed a complaint alleging (1) that ABIC violated the Truth in Lending Act ("TILA") (15 U.S.C. § 1601, *et. seq.*) and regulations promulgated thereunder (12 C.F.R. Pt. 226, hereinafter "Regulation Z") by failing to provide the requisite disclosures and (2) that Ace violated the Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692, *et seq.*) in its attempt to collect on the indemnity agreement and contingent note. The district court dismissed the complaint.

II.

"Where the district court dismisses the plaintiff's complaint for failure to state a claim, we must determine whether, considering the facts in the light most favorable to the plaintiff, it appears beyond doubt that she can prove no set of facts that would entitle her to relief." *Welch v. Laney,* 57 F.3d 1004, 1008 (11th Cir.1995) (internal quotations marks and citations omitted).

A. *The Truth in Lending Act*

TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). *See also* 12 C.F.R. § 226.2(a)(14). Plaintiff says that her execution of the contingent note and mortgage (as distinct from the bail bond indemnity agreement) constitute the relevant transaction and that the note and mortgage are an extension of "credit" as defined by TILA. Plaintiff further says the fact that there is a contingency to the note is irrelevant because she became legally obligated to ABIC when she executed the documents and, in any event, the contingency has occurred.

Plaintiff cites no authority for the proposition that the contingent note and mortgage are to be considered in a vacuum instead of as integral parts of a bail bond transaction. We think common sense dictates otherwise. Plaintiff points out that Florida law does not require that a note and mortgage be given in conjunction with a bail bond indemnity agreement. These instruments, however, do not distinguish the arrangement at issue from other bail bond arrangements. As a practical matter, without the contingent note and mortgage (or other acceptable collateral), Plaintiff would have received the services of no bail bondsman.

Plaintiff cites two district court decisions to support her position that the contingent note and mortgage constitute an extension of credit: *Bryson v. Bank of New York,* 584 F.Supp. 1306 (S.D.N.Y.1984); and *Copley v. Rona Enterprises, Inc.,* 423 F.Supp. 979 (S.D.Ohio 1976). Both are readily distinguishable. In *Bryson,* the district court held that the extension of credit through credit cards and a home improvement loan was covered by TILA, although the pertinent bank eventually rejected the consumer's home loan application. In *Copley,* the district court held that an installment contract to purchase a mobile home on specific credit terms constituted the extension of credit, despite the fact that the agreement was contingent on the seller's approval of financing.

Rather than support Plaintiff's position, these cases point out the basic flaw in her argument. Plaintiff quotes the *Bryson* court's discussion of TILA as protecting "consumers" who are "shopping for credit" and argues that she, too, was "shopping" for "credit" in executing the note and mortgage. We believe it strains credibility to say that an indemnitor on a bail bond agreement is "shopping for credit" when she agrees to the terms of a bail bond agreement. Instead, she is engaging in a standard bail bond transaction: she agrees to be obligated to the surety should the accused fail to appear in court at the scheduled time. Stated differently, we do not believe that executing an agreement to indemnify a bail bond surety and providing a note and mortgage to facilitate any indemnification that may become necessary is the "extension of credit" as that phrase is commonly understood or as used in the pertinent statute and regulations.

Turning to the terms of the contingent note itself, the note expressly provides that no amount is due (that is, there is no "debt") unless and until the bond is forfeited by the court. To the extent

that Plaintiff became liable for a "debt," it was not as a result of ABIC's extension of a line of credit to Plaintiff, but arose by court order when the bond was breached.  *See* Fla.Stat. § 903.26.

Plaintiff has pointed us to no case in which an analogous transaction has been held to constitute the extension of credit, and we are aware of none.  More important, the Official Staff Interpretations to Regulation Z (12 C.F.R. Pt. 226) provide that "[t]he following situations are not considered credit for purposes of the regulation:  ... Letters of credit."  12 C.F.R. Pt. 226, Supp. I.  Under Plaintiff's theory, because letters of credit require payment on demand upon the existence of certain contingencies (the presentation of certain documents, the performance of a condition precedent), a letter of credit would constitute an extension of credit.  *See* U.C.C. § 5-103(1)(a) (" "Credit' or "letter of credit' means an engagement by a bank or other person ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.")  But the Division of Consumer and Community Affairs of the Federal Reserve Board has determined otherwise.

We think that, within the context of posting a bail bond, a contingent note given in conjunction with an indemnification agreement (as well as a mortgage given as collateral on the note) is like a letter of credit.  The note (and mortgage) is a promise to pay upon the occurrence of a particular contingency which facilitates the posting of a bail bond by providing assurances of prompt payment (indemnification) to both the bail bondsman (Ace) and the bond surety (ABIC) in the event that the bail bond is forfeited, as well providing the obligee on the bail bond (the State of Florida) with assurances that the bail bond indemnitor has a strong financial incentive to ensure that the accused will appear in court at her scheduled time.  *See* Black's Law Dictionary, 904 (6th ed. 1990) ("Letters of credit are intended generally to facilitate purchase and sale of goods by providing assurance to the seller of prompt payment upon compliance with specified conditions or presentation of stipulated documents without the sellers having to rely upon the solvency and good faith of the buyer.")[1]

---

[1]As we hold that Plaintiff's execution of the contingent note and mortgage as part of the bail bond transaction does not constitute the extension of credit under TILA, we do not address Defendant's argument that Section 2 of the McCarran-Ferguson Act (15 U.S.C. § 1012)

B. *The Fair Debt Collection Practices Act*

The FDCPA imposes liability on "debt collectors" who fail to comply with its provisions when collecting a "debt." 15 U.S.C. § 1692k. The FDCPA provides that the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was originated by such person; ..." 15 U.S.C. § 1692a(6)(F)(ii).

In addition to the fact that the indemnity agreement specifically states that Plaintiff is "mak[ing] application to Ace Bonding" and that the bond fee is paid to Ace "in consideration of Second Party [Ace] arranging for execution of this Bail Bond," the complaint alleges that "[t]hese [bail bond] transactions are originated for ABIC by Ace and other bonding companies, ..."

Plaintiff says that Ace is not entitled to the originator exception as it only applies where the lender later sells or assigns the debt, as to a purchaser on the secondary market, but maintains responsibility for its collection. The two published cases interpreting this exception have indicated otherwise. *See Holmes v. Telecredit Service Corp.,* 736 F.Supp. 1289, 1293 (D.Del.1990) ("The original lender is covered by section 1692a(6)(A)'s exception for creditors. If the exception in section 1692a(6)(F)(ii) extended only to original lenders, it would be superfluous. The exception must therefore apply to entities besides the original lender that play a significant role in the transaction from its origination."); *Games v. Cavazos,* 737 F.Supp. 1368, 1386 (D.Del.1990) ("the exceptions for persons who "originate' a debt refers to persons other than the original lender"). As Ace, the bail bondsman, played a significant role in originating the bail bond transaction—including the indemnification agreement and contingent note—we hold that it is covered by the originator exception to the FDCPA.[2]

AFFIRMED.

---

precludes the application of TILA.

[2]As we hold that Ace is an "originator" under 15 U.S.C. § 1692a(6)(F)(ii), we do not address Ace's argument that the debt collection was "incidental to a bona fide fiduciary obligation" pursuant to 15 U.S.C. § 1692a(6)(F)(i).