**In re Donald B. VICKERS et ux., Debtors.**

**V. John Brook, as trustee, Plaintiff,**

**v.**

**Amaximis Lending, L.P., and, Paladian Financial, Inc., etc., Defendants.**

**Bankruptcy No. 99–11163–8C7.
Adversary No. 99–0765.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 5, 2001.

Andrew V. Tramont, Miami, FL, for Amaxisis Lending, L.P.

Michael LaBarbara, Tampa, FL, for Paladin Financial, Inc.

D. Turner Matthews, Longboat Key, FL, for V. John Brook.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT FILED BY PLAINTIFF AND DEFENDANT, PALADIN FINANCIAL, INC.

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

This adversary proceeding came on for hearing on August 21, 2001, of various motions pending in this case, including the motion for summary judgment filed by the defendant, Paladin Financial, Inc. ("Paladin Financial") (Document No. 41), and the plaintiff's motion for summary judgment as to liability (Document No. 45). The plaintiff's motion is in effect a cross-motion to the Paladin Financial motion.

At the hearing, counsel for the parties agreed that a ruling by the court in favor of Paladin Financial would effectively moot all other issues in this adversary proceeding. A ruling in favor of the plaintiff, however, will leave remaining issues as to damages and issues of liability as between the defendants.

At the hearing, the parties also agreed to present a stipulation of facts containing all facts necessary for the court to determine the issues raised in the cross-motions. The court therefore entered an order scheduling the filing of that stipulation and the parties' briefs (Document No. 62). The parties have filed their stipulation

(Documents Nos. 65 and 66) and their briefs [1] (Documents Nos. 63 and 64).

### I.

In this adversary proceeding, the plaintiff, the Chapter 7 trustee standing in the shoes of the debtors, seeks damages from the defendants for alleged violations of the federal Truth–in–Lending Act, 15 U.S.C. §§ 1601 et seq.

Boiled down to its essence, the dispute requiring decision by the court is quite simple. The debtors took out a second mortgage loan on their home with Casey Mortgage.[2] The defendant, Paladin Financial, purchased the note and mortgage from the originator of the loan and later sold the loan to the defendant, Amaximis Lending, L.P. ("Amaximis").[3] The plaintiff contends that the debtors did not receive the notice of their right to rescind as required by Section 125(a) of the Act, 15 U.S.C. § 1635(a), that the debtors gave timely notice of their election to rescind, that the defendants failed to refund to the debtors the amounts they paid on the mortgage, and that the defendants are therefore liable in damages pursuant to Sections 125(b) and 131 of the Act, 15 U.S.C. §§ 1635(b) and 1641.

The debtors signed the note, mortgage, and related loan closing documents on February 21, 1998. One of the closing documents that the debtors signed on February 21, 1998, was an Acknowledgement of Understanding of Conditional Loan Ap-

---

**1.** At the hearing, the defendant, Amaximis Lending, L.P., stated that it would be relying on the brief of the defendant, Paladin Financial, and that it would not be filing a separate brief.

**2.** Casey Mortgage is no longer in business and is not a defendant in this proceeding.

**3.** Pursuant to Section 131 of the Act, 15 U.S.C. § 1641(d)(1), subsequent holders of a note and mortgage, such as the defendants, are generally liable for Truth–in–Lending violations made by the loan's originator.

proval.[4] In relevant part, that document says:

> The undersigned Applicant(s) hereby acknowledge that the signing of the loan application and/or the other documents presented to the Applicants(s), *in no way constitutes, establishes nor signifies a formal loan commitment by Lender to approve the requested loan.*
>
> The undersigned Applicant(s) hereby acknowledge that *the requested loan is still conditioned* upon the review, investigation, approval and acceptance by the Lender of all facts, documents, representations and circumstances in connection with the requested loan—including all subjective and objective factors such as, but not limited to, the Applicant(s) credit history, property appraisals or inspections, income and employment verification, etc.
>
> The undersigned Applicant(s) hereby acknowledge that by receiving the loan application and agreeing to review all such subjective and objective factors in order to determine whether or not to approve the requested loan, that *Lender is not bound to make a loan to the Applicant(s), nor has it agreed to do so.*
>
> The undersigned Applicant(s) hereby acknowledge and understand that until such time as notification is given to Applicant(s) by Lender that the entire loan application and any and all supporting documents and verifications have been reviewed, approved, and accepted by Lender, *the Applicant(s) status is/are that of an individual seeking a loan, and that Lender is under no obligation to approve said loan request.* (Emphasis supplied).

The debtors also executed a document entitled Closing Statement/Agreement Ac-

knowledgement of Conditional Loan Approval.[5] In relevant part, that document says:

> Subject to the conditions set forth in Paragraph 2 below, this Closing Agreement, together with the loan documents signed by Borrower(s), constitute a binding agreement by Borrower(s) to accept a loan from Lender as set forth in the loan documents. Borrower(s) understand(s) he/she/they is/are bound to use efforts(s) to satisfy the conditions set forth in Paragraph 2, below.
>
> 1. *The signing of this Closing statement, and the related documents, constitute a binding commitment by Lender to lend, but only upon satisfactory fulfillment of the several conditions set forth in Paragraph 2, below.* Borrower(s) understand(s) that no employee or agent of the Lender has the authority to make an unconditional loan commitment until such time as all conditions in Paragraph 2, below have been met to the satisfaction of Lender or waived in writing by Lender.
>
> 2. Lender will complete processing of Borrower(s) loan application. *The loan is condition upon Lender receiving 1) a property appraisal, if required, adequate in Lender's sole discretion not only as to value, but to all such other considerations as Lender deems material, of property to be taken as collateral for the loan; 2) a title report, adequate in all respects Lender deems material, regarding property to be taken as collateral for the loan; 3) verification of financial information provided by Borrower(s) to Lender's satisfaction, including information relating to Borrower(s) income.* Each of the forgoing conditions, unless expressly waived in writing by Lender,

---

4. Exhibit F to the parties' Stipulation.

5. Exhibit G to the parties' Stipulation.

must be satisfied on or before the date shown in Paragraph 3, below. Additionally, Borrower(s) understand(s) that Lender has relied upon the accuracy of the information Borrower(s) has/have provided, and if Lender later learns that information give Lender is materially inaccurate, Lender may cancel this transaction, and may charge Borrower(s) for any expenses incurred. Finally, Borrower(s) agree(s) to advise Lender promptly of any change of employment, income, or credit obligations which may result in the cancellation of this transaction.

3. If Lender is unable to approve loan funding within 45 days of loan signing, either Borrower(s) or Lender may cancel the transaction, without the written consent of the other, and any loan documents shall be null and void unless an extension is agreed to by all parties. If Lender is unable to fund based on failure by Borrower(s) to supply supporting documentation, Lender shall be entitled to collect out of pocket expenses. Disbursement of loan proceeds and acceptance by Borrower(s) after the above date will constitute an extension of the agreement. (Emphasis supplied).

The debtors further signed and acknowledged a Notice of Right to Cancel[6] form that on its face met all Truth–in–Lending requirements. The form notified the debtors that they could cancel the transaction, without cost, no later than midnight of February 25, 1998, a date three business days from February 21, 1998, which was stated as the date of the transaction and also was the date they received the notice of the right to rescind, received their Truth–in–Lending disclosures, and executed all the documents.

Casey Mortgage funded the loan and distributed the proceeds on March 3, 1998. On July 28, 1999, counsel for the debtors gave notice of rescission to the defendant, Amaximis Lending, who then owned the loan. Amaximis did not treat the loan as rescinded, and the plaintiff now seeks damages pursuant to Section 130(a) and 131 of the Act, 15 U.S.C. §§ 1640(a) and 1641.

## II.

The plaintiff contends that the notice of right to cancel given to the debtors at the February 21, 1998, signing of the documents violated the requirements of the Truth in Lending Act and was thus ineffective. The plaintiff asserts that the notice of right to cancel was premature because it was signed before the loan was "consummated" within the meaning of the Act. The plaintiff argues that the debtors' right to rescind the transaction extended beyond February 25, 1998, as a consequence of the ineffective notice of rescission and that the debtors' rescission of the transaction was therefore timely. The plaintiff relies upon the documents signed on February 21, 1998, to support his position that the notice of rescission was premature and ineffective, particularly the Acknowledgement of Understanding of Conditional Loan Approval and the Closing Statement/Agreement Acknowledgement of Conditional Loan Approval.

The defendants argue that the loan documents, taken together, establish that Casey Mortgage complied in full with its requirements under the Truth–in–Lending Act and the notice of right to cancel was therefore effective in establishing February 25, 1998, as the date by which the debtors were required to give notice of rescission.

---

**6.** Exhibit E to the parties' Stipulation.

## III.

■ Section 125(a) of the Act, 15 U.S.C. § 1635(a), requires a creditor in certain circumstances, here present, to provide to an obligor a notice of the obligor's right to rescind the transaction. Section 125(a) provides, in relevant part, that:

> ... the obligor shall have the right to rescind the transaction *until midnight of the third business day following the consummation of the transaction* or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (Emphasis supplied).

It is undisputed that Casey Mortgage delivered the information and rescission forms required under Section 125(a). The plaintiff argues, however, that the loan was consummated on a date later than February 21, 1998, and the notice of rescission was therefore ineffective and in violation of the Act. Section 125(f) of the Act, 15 U.S.C. § 1635(f), and Regulation Z, Section 226.23(a)(3), 12 C.F.R. § 226.23(a)(3), provide in this circumstance for rescission within three years of the consummation of the transaction.

Under Regulation Z, Section 226.2(a)(13), 12 C.F.R. § 226.2(a)(13), consummation means the time the consumer becomes contractually obligated on the transaction. As framed by the plaintiff, therefore, this adversary proceeding turns in the first instance on whether the parties made a legally enforceable loan contract at the loan "closing" on February 21, 1998, at which the debtors executed the loan documents. Because the debtors executed many documents at this closing, the court will look to all of the documents in determining an answer to this threshold question. *Braniff, Inc. v. GPA Group plc (In re Braniff, Inc.)*, 118 B.R. 819, 844 (Bankr. M.D.Fla.1989) ["Multiple contract documents may form one unified agreement."].

Among the loan documents executed by the debtors were a promissory note for $69,000 bearing interest at 11.99 percent payable in equal monthly installments of principal and interest in the amount of $726.21 for a term of 25 years, a mortgage on the debtors' homestead securing the note, a closing statement, the Notice of Right to Cancel, a Truth–in–Lending Disclosure Statement, the Acknowledgment of Understanding of Conditional Loan Approval,[7] and the Closing Statement/Agreement Acknowledgment of Conditional Loan Approval.[8] Casey Mortgage was the obligee on the note and the mortgagee on the mortgage. Although the debtors executed the loan documents as described on February 21, Casey Mortgage did not fund the loan until March 3.

The plaintiff argues that Casey Mortgage was not legally obligated on February 21, 1998, to fund the loan because the documents were conditioned on the satisfaction of basic underwriting requirements typically done before a closing. The plaintiff characterizes Casey Mortgage as equivalent to a mortgage broker rather than a lender. The plaintiff contends that Casey Mortgage's obligation to make the loan was illusory on February 21, 1998, because the loan documents did not obligate it to make the loan.

Despite the existence of numerous conditions in the documents the debtors signed, the summary judgment record reflects a more fundamental failure in the

---

7. The document quoted first in Section I above, Exhibit F to the parties' Stipulation.

8. The document quoted second in Section I above, Exhibit G to the parties' Stipulation.

loan documents.[9] The summary judgment record contains no document or writing signed by Casey Mortgage obligating it to loan the money to the debtors. Surprisingly, there is no commitment letter. Similarly, Casey Mortgage did not execute the Closing Statement/Agreement Acknowledgement of Conditional Loan Approval or any of the other documents the debtors executed on February 21. Although paragraph 1 of the Closing Statement/Agreement document purports to be a binding agreement by the lender to lend upon fulfillment of a number of conditions precedent, only the debtors signed it; Casey Mortgage did not execute the document.

Paladin Financial argues that the court should nevertheless find a commitment by Casey Mortgage by looking at all the documents and circumstances that occurred on February 21 and the fact that Casey Mortgage in fact funded the loan on March 3. Florida's Banking Statute of Frauds, Section 687.0304(2), Florida Statutes, however, provides that:

> A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Thus, absent a writing, there can be no legally enforceable loan agreement on February 21.

Had Casey Mortgage failed to fund the loan, the debtors would not have been able to bring an action for breach because Casey Mortgage had signed no document satisfying this statute of frauds. Although the debtors had signed documents that likely satisfy this statute, Casey Mortgage had not. Yet, the statute requires that both parties must sign a document.[10] Consequently, there was no agreement between the parties to make a loan at the time the debtors signed the documents on February 21. *University Creek Associates II, Ltd. v. Boston American Financial Group, Inc.*, 100 F.Supp.2d 1345 (S.D.Fla. 2000); *Financial Federal Savings & Loan Association of Dade County v. Continental Enterprises, Inc.*, 338 So.2d 907, 908 (Fla. 3rd DCA 1976) [Loan application is not binding contract; contract comes into being with acceptance and disbursement by lender].

Had Casey Mortgage funded the loan on February 21, the absence of a commitment letter or other writing signed by it would be insignificant; the making of the loan documents by the debtors and the funding of the loan by Casey Mortgage would make an enforceable contract. At best, the state of affairs on February 21 was that the debtors had offered, by executing the documents, to accept a loan on the terms set forth in the documents. *Jackson v. Grant*, 890 F.2d 118, 121 (9th Cir. 1989). Casey Mortgage did not accept

---

**9.** Had Casey Mortgage given a commitment letter obligating it to fund the loan subject to those approvals and conditions or had it signed the Closing Statement/Agreement Acknowledgment of Conditional Loan Approval document, the existence of those conditions likely would not have made the Casey Mortgage's obligation illusory. Black letter contract law recognizes such conditions precedent and implies a reasonableness standard in their interpretation. J. Murray, *Grismore on Contracts* § 127 (rev. ed.1965). Black letter contract law also recognizes personal satis-

faction provisions. *Id.* at § 129. In addition, such provisions generally do constitute consideration. *Id.* at § 57.

**10.** "Although the statute does not in terms require that the debtor and the creditor sign the writing at one sitting, we think the statute contemplates that the writing should be signed by both parties as part of the same transaction." *Collins v. Citrus Nat'l Bank*, 641 So.2d 458, 459 (Fla. 5th DCA 1994) [referring to § 687.0304(2), Fla.Stat.].

that offer until it funded the loan on March 3.

 It follows, therefore, that the plaintiff is correct in his Truth–in–Lending analysis:

a. The loan transaction involved here was not consummated until March 3, 1998, when the debtors became contractually obligated on the transaction. Regulation Z, Section 226.2(a)(13), 12 C.F.R. § 226.2(a)(13).

b. Casey Mortgage was required to give notice to the debtors of their right to rescind within three business days of consummation, or March 6, 1998. Section 125(a) of the Act, 15 U.S.C. § 1635(a); Regulation Z, Section 226.23(a)(3), 12 C.F.R. § 226.23(a)(3). The notice had to specify the date the rescission period expired. Regulation Z, Section 226.23(b)(1)(v), 12 C.F.R. § 226.23(b)(1)(v).

c. Casey Mortgage gave a notice of right to rescind before consummation and included in that notice an incorrect expiration date. The notice of right to rescind was therefore ineffective and in violation of the Truth–in–Lending Act.

d. The debtors, therefore, had until three years after consummation to rescind the transaction. Section 125(f) of the Act, 15 U.S.C. § 1635(f); Regulation Z, Section 226.23(a)(3), 12 C.F.R. § 226.23(a)(3). The debtors' notice of rescission given on July 28, 1999,[11] to the defendant, Amaximis Lending, who then held the note and mortgage, was timely.

e. Neither defendant complied with the debtors' notice of rescission.

f. As subsequent holders of the note and mortgage, the defendants are liable to the plaintiff in damages. Sections 130 and 131(d)(1) of the Act, 15 U.S.C. §§ 1640 and 1641(d)(1).

This result is fully consistent with and supported by *Jackson v. Grant, supra,* which is remarkably close to the facts of this case. Moreover, none of the cases cited by Paladin Financial detracts from these conclusions. Paladin Financial cites *Copley v. Rona Enterprises, Inc.,* 423 F.Supp. 979 (S.D.Ohio 1976), for the proposition that "[a]n agreement with similar language binding only the borrower initially to close a loan as soon as certain conditions were made even though the lender was not obligated until all of its conditions were met was found to constitute loan consummation in the Truth in Lending concept." Brief at 4. *Copley,* however, involved a contract signed by both the borrowers and the lender. The contract included conditions precedent, including acceptance of financing, that were required to be fulfilled before the lender was obligated to fund. *Id.* at 982. In this case, Casey Mortgage executed no agreement and had no obligation to fund even if the debtors fulfilled the conditions stated in documents that the debtors signed. Clearly, the transaction was consummated in *Copley* when the parties signed the agreement because both were bound. The transaction in this case was not consummated when the debtors signed the loan documents because Casey Mortgage was not then bound.

Paladin Financial cites *C.W. Kistler Co. v. Hotel Martinique, Inc.,* 44 So.2d 288 (Fla.1950), and *Ballou v. Campbell,* 179 So.2d 228 (Fla. 2d DCA 1965), for the proposition that Florida recognizes and enforces unilateral contracts. Paladin Financial then argues that, because unilateral contracts are recognized, the contract here was consummated on February 21, 1998. Brief at 5.

---

**11.** Exhibit H to the parties' Stipulation.

408

A unilateral contract, of course, is one in which one person makes a promise to another but the other makes no promise in return; the exchange for the promise is something other than a promise. In *Hotel Martinique*, the parties had entered into a written contract in which one promised to pay a commission to the other for procuring a loan. The second had no obligation to procure a loan but, if he did, the first would pay a commission. In *Ballou*, the parties orally agreed that if one took over, managed, and made successful a business, the other would give the first the stock in the business. Again, the first had no obligation to manage the business but, if he did, the other would give the stock.

In this case, however, Casey Mortgage never entered into any contract with the debtors that satisfied the statute of frauds before funding the loan on March 3, 1998. Had the parties made an agreement to the effect that, if Casey Mortgage funded the loan (having no obligation to do so), the debtors would borrow the money, these unilateral contract cases perhaps would be applicable. When the facts are that Casey Mortgage made no agreement whatsoever, they are not. Instead, our situation is merely one of the debtors offering to borrow the money on February 21, 1998—an offer that Casey Mortgage accepted on March 3, 1998.

## IV.

For these reasons, the court concludes that the stipulation of the parties (Documents Nos. 65 and 66) filed in connection with the cross-motions for summary judgment establishes that there is no genuine issue as to any material fact as to the liability of the defendants and that the plaintiff is therefore entitled to a judgment as a matter of law. The court grants the plaintiff's motion and denies the motion of Paladin Financial accordingly.

By separate order, the court will schedule a further preliminary pretrial and scheduling conference to discuss with counsel what further proceedings should be scheduled to conclude the remaining issues.