641 So.2d 458 (1994)
Ronald J. COLLINS, Appellant,
v.
CITRUS NATIONAL BANK, Appellee.
No. 93-2067.
District Court of Appeal of Florida, Fifth District.
August 12, 1994.
Stephen W. Johnson and G. Michael Mahoney of McLin, Burnsed, Morrison, Johnson & Robuck, P.A., Leesburg, for appellant.
Young J. Simmons of Simmons and Hart, P.A., Ocala, for appellee.
PETERSON, Judge.
Ronald J. Collins appeals the dismissal of Counts I and II of his complaint and Counts I, II and III of his amended complaint. We reverse in part and affirm in part.
In Count I of his original complaint Collins alleged that he and Citrus National Bank (the Bank) entered an agreement whereby he would secure a third party's line of credit with an $80,000 certificate of deposit (C.D.). In exchange, he alleged, the Bank agreed to retain $80,000 worth of titles to automobiles owned by the third party. Collins further alleged that the third party defaulted on the line of credit, that the Bank used the $80,000 C.D. to satisfy the line of credit, but that the Bank had not retained as promised the automobile titles.
Attached to the complaint were hypothecation and assignment agreements executed by *459 Collins and a letter to him from the Bank president. The letter stated in part:
You would put up a [sic] $80,000 C.D. to secure a used car floor plan line of credit for Crystal River Auto Sales. The Bank would charge the auto sales business 1% over the rate paid on the C.D. (you, of course, would receive all interest earned on the C.D.). The Bank would retain titles totaling $80,000 wholesale value, per the N.A.D.A. Book of Auto Values, for your benefit. You would probably want to have an agreement with Frankie stating you could obtain the titles from the Bank under certain circumstances and negotiate same. We would set the above up for one year and see how the business performs and at maturity try to set up the line using different collateral.
Shortly after receipt of the letter, Collins alleged, he executed the hypothecation and assignment agreements.
The Bank argues that the trial court properly dismissed the complaint and amended complaint and cites section 687.0304, Florida Statutes (1989) which provides in part:
(2) CREDIT AGREEMENTS TO BE IN WRITING 
A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
Section 687.0304 "restricts the ability of the borrower to bring suit upon oral credit agreements... ." House of Representatives of Florida, Comm. on Commerce Final Staff Analysis & Economic Impact Statement of 1989 (1989) at 3 (hereafter Staff Analysis); see also John H. Hickey, Credit Agreements Required in Writing: The New Statute of Frauds, LXIV no. 6 Florida Bar Journal 69 (June 1990). The statute is intended to provide "an additional element of certainty and stability in a transaction for both the lender and the borrower... ." Staff Analysis at 2. The statute was patterned after Minnesota Statute section 513.33, the purpose of which was to prevent the litigation of the difficult claims, made by financially unsophisticated borrowers, of reliance upon bankers' alleged oral promises. Rural American Bank of Greenwald v. Herickhoff, 485 N.W.2d 702 (Minn. 1992).
We agree with Collins that the letter is sufficient to satisfy the requirements of the statute that there be a writing, that it express consideration, and that it set forth the relevant terms and conditions. The relevant terms and conditions set forth in the letter are that the bank would extend credit to the auto business and that Collins would secure the credit with an $80,000 C.D. The interest on the credit would be 1% over the interest earned on the C.D., with Collins receiving the interest earned by the C.D. The final term is that the bank would retain titles to $80,000 worth of automobiles for the benefit of Collins. We do not agree with Collins, however, that, by affixing his signature to the letter just prior to filing suit, and long after the credit transaction, he met the requirement that the writing be signed by the debtor. Although the statute does not in terms require that the debtor and the creditor sign the writing at one sitting, we think the statute contemplates that the writing should be signed by both parties as part of the same transaction.
That does not dispose of the issue regarding the signatures, however. Where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. See International Ship Repair & Marine Services v. General Portland, Inc., 469 So.2d 817 (Fla. 2d DCA), rev. denied, 479 So.2d 117 (Fla. 1985). If, in the instant case, the letter, the hypothecation agreement, and the assignment were all part of the same transaction, then we think Collins' signatures on the assignment and hypothecation agreement would satisfy the signature requirement of the statute. At this stage, however, where the allegations of the complaint are tested only for sufficiency, it cannot be determined whether the documents were signed as part of the same transaction.[1] *460 See Evans v. Parker, 440 So.2d 640 (Fla. 1st DCA 1983) (statute of frauds is affirmative defense which cannot properly be raised on a motion to dismiss unless the complaint affirmatively and clearly shows the conclusive applicability of such defense to bar the action).
Because Collins has sufficiently alleged, in Count I of the original complaint, an agreement between the parties and a writing that meets the requirements of section 687.0304, the court erred in dismissing Count I. The court properly dismissed Count II of the original complaint because the letter is not, as alleged, in itself a contract.
As to the amended complaint, we agree that Count I does not state a cause of action because it does not allege facts which would give rise to a fiduciary duty on the part of the bank. However, it should not have been dismissed with prejudice. If Collins can amend it to state a cause of action he should be allowed to do so. Also, for the reasons stated above as to Count I of the original complaint, the trial court erred in dismissing Counts II and III of the amended complaint which allege misrepresentation and conversion.
Accordingly, the orders dismissing Count II of the original complaint and Count I of the amended complaint are affirmed, except that the term "with prejudice" is stricken as to the latter count. The orders dismissing Count I of the original complaint and Counts II and III of the amended complaint are reversed, and this cause is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED.
DAUKSCH, J., concurs.
GRIFFIN, J., concurs and concurs specially with opinion.
GRIFFIN, Judge, concurring specially.
As set forth in the majority opinion, by letter dated November 24, 1989, Citrus National Bank ["CNB"] communicated a proposal to Ronald Collins to structure the continued borrowing of a third party named Frankie VanDeBoe who operated a used car business under the name of Crystal River Auto Sales. VanDeBoe was already a customer of the bank, who had borrowed in excess of $35,000 and whose financial condition was declining. In essence, the bank's proposal was that if Collins would put up an $80,000 CD to secure VanDeBoe's borrowing, the bank would continue to lend to him and would retain automobile titles having a wholesale value of $80,000 for Collins' benefit. Ten days later, Collins executed an assignment of CD # 1370 "for the purpose of securing payment of each and every debt ... which the undersigned may now or at any time hereafter owe to the depository institution... ." [emphasis added]. He also signed an hypothecation agreement stating: "In consideration of your making, or renewing or extending a loan, or loans to Crystal River Auto Sales for which the following property belonging to me has been tendered to you as collateral security... ." The space that followed for identifying the collateral was left blank. According to the complaint, two days later, CNB used this line of credit to repay itself $35,613.95 and one week later, an additional $3,666.05. In the nine day period following Collins' pledge of his CD, CNB paid out all $80,000 on the line of credit without receiving any title certificates.
Relying on several different legal theories, including breach of fiduciary duty, misrepresentation, conversion and breach of contract, Collins seeks either the return of his certificate of deposit or damages in the amount of $80,000.[1] The bank's response is interesting. On the one hand, it asserts that there was no enforceable agreement with the bank that *461 will allow Collins any remedy for the bank's failure to retain titles for his benefit. The problem, says the bank, is that its "proposal" was not signed by Collins, so the agreement does not comply with the new banking "statute of frauds." § 687.0304, Florida Statutes. Out of the other side of its mouth, however, the bank has to maintain that it did have an enforceable agreement with Collins because it took his $80,000 CD. Yet, no document exists, other than its own proposal, that authorizes their seizure of the CD. Without the proposal or equivalent parol evidence, the hypothecation and assignment agreements are meaningless. This case is wholly unlike the situation where a borrower relies on an "unwritten agreement" or term to assert some right against the bank. In effect, the use of this agreement is defensive:[2] i.e., "CNB, you cannot enforce your security interest in my CD because you failed to do what you promised." What makes Collins the plaintiff is that they were holding the CD.
Although I fully concur in the opinion of Judge Peterson that the combination of writings in this case can satisfy the requirements of section 687.0304, Florida Statutes, there is another reason why the bank's position is vulnerable in this case.
The law has long recognized that one party will not be allowed to assert the Statute of Frauds as a bar to enforcement of an agreement where the other party to the agreement has tendered full performance of his obligations under the agreement and the benefit of those obligations has been fully accepted by the party seeking to repudiate the agreement. See Hiatt v. Vaughn, 430 So.2d 597 (Fla. 4th DCA 1983). I recognize that recently, in Collier v. Brooks, 632 So.2d 149 (Fla. 1st DCA 1994), by a 2-to-1 vote, a panel of the First District Court of Appeal appears to have concluded that this doctrine applies only to real estate transactions; however, the court's explanation of "full performance" versus "part performance" is unclear. Its reasoning also is inapplicable to this case in that here we are dealing with a "new" Statute of Frauds, one which is more analogous to the real property Statute of Frauds than the one under consideration in Collier. Finally, although not especially well pleaded, the complaint under consideration in this case does contain a demand for return of the CD, which is in the nature of a claim for recision, which sounds in equity.
NOTES
[1] Similarly, it cannot be determined whether the letter was an offer or a mere preliminary negotiation which contemplated a three-party agreement. Neither can it be determined, if the letter was an offer, whether it was accepted. These issues also must be resolved as the case proceeds past the pleading stage.
[1] Breach of contract was the theory pleaded in the original complaint which was dismissed on the basis of section 687.0304, Florida Statutes. The amended complaint asserted the remaining claims. The order appealed is a final order dismissing the cause for failure to state a cause of action.
[2] See Griffiths v. Barnett Bank of Naples, 603 So.2d 690 (Fla. 2d DCA 1992).