**UNIVERSITY CREEK ASSOCIATES II, LTD., a Florida limited partnership, Plaintiff,**

v.

**BOSTON AMERICAN FINANCIAL GROUP, INC., a Delaware corporation, f/k/a Bostonia American Financial Group, Inc., and Credit Suisse First Boston Mortgage Capital LLC, a New York corporation, Defendants.**

No. 98–6643–CIV.

United States District Court, S.D. Florida.

March 24, 2000.

ject to the Court's ruling on the motion for summary judgment. If the breach of contract claims survive summary judgment, then, prior to trial, University must elect which theory it will pursue (contract or quasi-contract).

Steven M. Katzman, Tew, Cardenas, Rebak, Kellogg, Lehman, DeMaria & Tague, LLP, West Palm Beach, FL, for Plaintiff.

Patrick Gonya, Jr., Fowler, White, et al., Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Defendants Boston American Financial Group, Inc. and Credit Suisse First Boston Mortgage Capital, LLC's (collectively, "the Boston defendants") motion for summary judgment (D.E.# 61).[1] For the reasons stated below, the Court grants the defendants' motion.

### PROCEDURAL BACKGROUND

Plaintiff University Creek Associates II, LTD. ("University") commenced this action in state court with the filing of a four-count complaint, asserting claims for

---

1. As discussed below, the Boston defendants' motion to dismiss has been converted to a motion for summary judgment.

breach of contract, anticipatory repudiation and promissory estoppel. On June 18, 1998, the Boston defendants removed the action, based on diversity jurisdiction. Thereafter, the Boston defendants moved to dismiss the complaint.

In its original complaint, University alleged the following facts. In June, 1997, the Boston defendants offered to procure a loan for Mercader, Schwartz, Karp & Company ("MSK") for the purpose of acquiring real property leased and occupied by a Winn–Dixie store. Acting upon the Boston defendants' instructions, MSK formed University as a "special purpose entity" to be both the borrower and the purchaser of the property. On September 15, 1997, MSK and the Boston defendants executed a commitment agreement, dated September 10, 1997, which University characterized as a contract.[2] Thereafter, on October 10, 1997, the Boston defendants sent MSK a second commitment agreement, which University characterized as an anticipatory repudiation of the first agreement. The loan by the Boston defendants never materialized and University sought and obtained alternative financing to purchase the property. In its complaint, University also alleged that it had materially changed its position and incurred expenses in reliance of the first commitment agreement. Upon these facts, University predicated its claims for breach of contract (Count I), anticipatory repudiation (Count II), breach of duty of good faith and fair dealing (Count IV), and promissory estoppel (Count III).

The Boston defendants moved to dismiss the breach of contract claims, arguing that the September 10, 1997 commitment agreement lacked essential elements. In an order dated October 21, 1998, the Court noted, *inter alia,* that the commitment letter: proposed two types of loans, a fully amortized and an insured balance loan, each with a different principal amount;

and did not specify an interest rate. The Court went on to rule as follows:

> A breach of contract claim predicated on an instrument that fails to specify the amount of interest, terms of repayment, or funding does not state a cause of action under Florida law. *Forest Creek Dev. Co. v. Liberty Savings & Loan Assoc.,* 531 So.2d 356, 357 (Fla. 5th DCA 1988). Because essential terms of this loan agreement are lacking, University's claim for breach of contract and anticipatory repudiation must be dismissed.... Because University's breach of contract claim is subject to dismissal, [the] claim [for breach of duty of good faith and fair dealing] too must be dismissed.

*See* Order dated October 21, 1998, at 6–7 (D.E.# 26). Having determined that there was no contract, the Court dismissed Counts I, II and IV with prejudice. After addressing the Boston defendants' arguments with respect to Count III, the Court concluded that University had sufficiently pled the claim for promissory estoppel asserted in that count. Therefore, the Court denied the motion to dismiss Count III. Within the time frame prescribed by the Court's order, the Boston defendants answered the complaint as to that remaining count.

On November 2, 1998, University filed a motion for rehearing, objecting to the Court's dismissal of the contract claims. Alternatively, University sought leave to amend the complaint to allege that the missing essential elements were agreed upon by the parties. By Order dated March 31, 1999, the Court rendered the dismissal of Counts I, II and IV without prejudice and granted University leave to file an amended complaint. *See* Order on Plaintiff's Motion for Rehearing (D.E.# 46). On April 19, 1999, University

---

**2.** Although execution occurred on a later date, the Court refers to the commitment letter as the September 10, 1997 agreement.

filed its amended complaint, reasserting all four counts.[3]

The Boston defendants then moved to strike as sham or false allegations in the amended complaint that, prior to October 1, 1997, University had selected the fully amortizing loan option and that the Boston defendants had acknowledged and agreed to such selection as indicated by correspondence dated October 1, 1997 and October 10, 1997. In support of their motion to strike, the Boston defendants argued that the new assertions were inconsistent with the original complaint, and with University's prior posture in this litigation, that it had never selected one of the two loan options. The Boston defendants further argued that, absent the challenged allegations, Counts I, II and IV of the amended complaint failed to state claims for breach of contract and anticipatory repudiation. Finally, the Boston defendants sought dismissal of Count III, the claim predicated on promissory estoppel.

By Order dated June 22, 1999, the Court denied the motion to strike, stating:

> In granting University leave to amend Counts I, II and IV, ... the Court assumed the good faith of the representations made by University (through its attorneys, as officers of the Court) that it could properly allege the essential elements of a contract. If the facts asserted in the amended complaint are not ultimately established, University will end up in the same posture as it was prior to filing its motion for reconsideration, with one exception. University and its counsel may become subject to sanctions if, as the Boston defendants argue, they have been playing "fast and loose" with the Court. At this stage of the proceedings, however, the Court is not in a position to make such a judgment.

Therefore, the Court denies the Boston defendants' motion to strike.

*See* Order on Defendants' Motion to Strike and Motion to Dismiss Amended Complaint, at 7 (D.E.# 73). With regard to the Boston defendants' motion to dismiss, the Court noted that, in opposing the motion, University had relied upon matters outside the pleadings. Therefore, pursuant to Fed.R.Civ.P. 12(b), the Court deemed the motion to dismiss Counts I, II and IV as one for summary judgment and allowed the parties additional time to file supplemental memoranda and evidentiary materials. Finally, the Court denied the Boston defendants' motion to dismiss Count III. The Court concluded that University could properly assert a promissory estoppel claim in the alternative to its breach of contract claims, subject to the Court's ruling on the motion for summary judgment. Hence, the Court advised University that if the breach of contract claims were to survive summary judgment, then, prior to trial, University would be compelled to elect which theory it would pursue (contract or quasi-contract).

In accordance with the Court's order, the Boston defendants and University have filed their supplemental briefs and evidentiary materials in support of, and in opposition to, the motion for summary judgment on the three breach of contract claims. In addition, the Boston defendants seek summary judgment as to the promissory estoppel claim. Both sides having received ample opportunity to present their respective positions, the motion for summary judgment as to all four counts is ripe for ruling.[4]

## DISCUSSION

In support of their motion for summary judgment, the Boston defendants invoke

---

**3.** By that time, University's original counsel had withdrawn and new counsel had entered an appearance.

**4.** On October 6, 1999, the Court denied University's motion to strike the Boston defen-

dants' supplemental memorandum and granted its alternative motion to file a response thereto, as well as the Boston defendants' request for leave to file a reply. (D.E.# 85).

Florida's Banking Statute of Frauds, which provides:

> A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.

Fla. Stat. § 687.0304(2). As previously stated, the Court has determined that the September 10, 1997 commitment letter, standing alone, is not a contract because if fails to specify the type of loan and the loan amount.[5] University has sought to cure this defect by alleging that, prior to October 1, 1997, it had selected the fully amortizing loan and that the Boston defendants had acknowledged and agreed to such selection. University relies on correspondence from Scott Wentnick, an employee of the Boston defendants, dated September 29, 1997 and October 1, 1997.[6] In *Collins v. Citrus Nat'l Bank,* 641 So.2d 458 (Fla. 5th DCA 1994), the Fifth District Court of Appeals ruled with regard to the Banking Statute of Frauds that, "Although the statute does not in terms require that the debtor and the creditor sign the writing at one sitting, we think the statute contemplates that the writing should be signed by both parties as part of the same transaction." *Id.* at 459. Assuming that the letters upon which University relies are part of the transaction evidenced by the September 10, 1997 letter, the Court proceeds with this analysis.

On September 29, 1997, Scott Wentnick, acting for the Boston defendants, wrote the following letter to University's principal, Stanley Schwartz.

> With this letter, I hope to summarize the Winn Dixie transaction to this point. The estoppel and SNDA Jeff Keffer sent to Sam Navon incorporates all the Duff and Phelps requirements we have discussed. We are still waiting to hear from S & P and Fitch regarding their credit reviews of the Lease Underwriting Report.
>
> As far as transaction costs are concerned, attached is a quote sheet that indicates your gross loan proceeds, estimated reserves and transaction expenses, and your net loan proceeds. Please note, reserves will be trapped from rent every month and held by the servicer. The servicer will release these funds upon receipt of an invoice for work completed as contemplated by the Lease. To the extent these funds are not spent they will remain with the servicer for future expenses. At the end of the Loan term, the reserve fund will be flushed back to the Borrower.

*See* Exhibit B to University's supplemental memorandum, D.E. # 80. The quote sheet attached to the letter includes the following figures: gross loan proceeds, $8,027,524; net loan proceeds, $7,801,836. Among the transaction expenses that are listed, there is no figure provided for "residual value insurance", a requirement for the insured balance loan, but not for the fully amortized loan. University relies on these figures, and the absence of any language in the letter stating that selection of the loan type was still pending, as written proof that selection of the fully amortized loan had already been agreed to by the parties.

There are several flaws in University's argument. The quote sheet upon which University relies includes the following language: "This proposal represents an expression of interest on the part of [the Boston defendants] to enter into an agree-

**5.** Because the letter agreement provides a formula for computation of the interest rate, that contract element is no longer a point of contention.

**6.** In its amended complaint, University had also cited the October 10, 1997, letter from Managing Director Jeremiah Lucey transmit-

ting an amended commitment letter (which University has characterized as a repudiation of the first commitment letter) as written evidence of its selection of a loan type. In its supplemental brief, however, University does not rely on this document.

ment to provide financing, subject to changes in market conditions." Therefore, nothing in the quote sheet is evidence of an agreement as to loan type or loan amount.[7] Moreover, "silence" in the body of Wentnick's letter cannot be construed as an expression of agreement with regard to the loan type and loan amount. Thus, the September 29th letter does not supply the essential elements missing from the September 10, 1997 commitment letter. Assuming, for purposes of ruling on the Boston defendants' motion for summary judgment, that the inferences proposed by University were drawn in its favor, the September 29, 1997 letter fails to comport with the requirements of the Banking Statute of Frauds because it is not signed by the debtor.

■ On October 1, 1997, Wentnick wrote three additional letters to Schwartz. Each of the three letters opens with the following identical language:

> This is to advise you that the Commitment Letter from Bostonia American Financial Group, Inc. and Credit Suisse First Boston to provide financing on the above referenced property is still in effect, and that Bostonia agrees to waive the Commitment Deposit. Now that we have received the Winn Dixie Amendment, all that remains is to receive from the tenant the estoppel and SNDA that our counsel has provided to your counsel.

*See* Exhibits C, D and E to University's supplemental memorandum, D.E. # 80.

The remaining language in each of the letters varies. One letter ends with: "Your loan proceeds based on market conditions today would be $8,027,524." *See* Exhibit C. Another closes with: "As you can see from the attached sheet, your gross loan proceeds based on today's market conditions are $8,027,524. We anticipate Closing between November 1 and November 30." *See* Exhibit D. The third letter states: "We anticipate closing the loan within ten days of receipt of these tenant related documents. There will be no problems with closing if for unforeseen reasons it does take longer than ten days." *See* Exhibit E.[8] The analysis with regard to Exhibit E is the same as the one conducted for the September 29, 1997 letter. With regard to Exhibits C and D, although they do include a loan amount, neither of the two letters contains affirmative language indicating agreement on the type of loan. Moreover, neither is signed by the debtor.

■ University contends that the letters need not conform with the Statute of Frauds because they do not constitute a "credit agreement." This argument ignores the Court's prior ruling that the September 10, 1997 letter agreement, standing alone, does not constitute a contract and that the role of the additional writings is to supply the missing elements. Therefore, to the extent that the September 29 and October 1, 1997 letters have any relevance, it is to complete the "credit

---

**7.** A similar issue arose at the outset of this litigation. University had attached to its original complaint the purported contract with the Boston defendants as Exhibit "A" to the complaint. In addressing the Boston defendants' motion to dismiss, the Court examined Exhibit "A", which consisted of the September 10, 1997 letter agreement, as well as two additional pages reflecting numerical projections. In granting the motion, the Court noted the words "this proposal represents an expression of interest ... to enter into an agreement to provide financing subject to changes in market conditions" which appeared on the two pages showing numerical projections. Thereafter, University took the

position that the projection sheets were not part of the letter agreement and did not attach them to its amended complaint.

**8.** According to Wentnick's deposition testimony, the three versions were drafted in an attempt to satisfy Schwartz's goal to get Winn Dixie to move quicker on providing the documents referred to in the letters; i.e., the estoppel and SNDA. *See* Deposition of Scott Wentnick, at 190–91 and 200 (D.E.# 75). Although the Court need not address the "purpose" of the letters, Wentnick's testimony helps explain the existence of three of them, all bearing the same date.

agreement" of September 10, 1997. Alternatively, University argues that the September 10, 1997 letter agreement satisfies the Statute of Frauds. Again, University ignores the Court's prior ruling that the commitment letter does not constitute a contract, hence, does not set forth "the relevant terms and conditions." Finally, University relies on the deposition testimony of its principal, Stanley Schwartz, to establish that the latter had orally informed Wentnick of his decision to select the fully amortizing loan and that Wentnick had accepted this choice. *See* Deposition of Stanley Schwartz, at 66–79 (D.E.# 79). Assuming the truth of Schwartz's testimony, this "oral agreement" does not overcome the Banking Statute of Frauds.

■ Having addressed the parties contentions, the Court concludes that the Boston defendants are entitled to summary judgment as to the breach of contract claims asserted in Counts I, II and IV of the amended complaint because they are barred by Florida's Banking Statute of Frauds. With regard to Count III, University's promissory estoppel claim, the Boston defendants have cited Florida case law for the proposition that such a claim cannot be allowed to circumvent the requirements of the Statute of Frauds. The Court notes that University has not countered the Boston defendants' argument. In any event, the Court finds that this legal principle is applicable to the case. Therefore, the Court also grants summary judgment in favor of the Boston defendants as to Count III.

In light of this determination, the Court need not address the Boston defendants' additional argument that University's more recent allegations are barred by judicial estoppel. According to the Boston defendants, University's claims that the parties had reached an agreement as to the loan type are nothing more than a sham, designated only to evade dismissal of its claims, and are contradicted by University's previous submissions in this case. Although the Court need not consider application of judicial estoppel, the Court finds it appropriate to mention a related issue. As foreshadowed by the Court in its Order on Defendants' Motion to Strike and Motion to Dismiss Amended Complaint, University has ended up "in the same posture as it was prior to filing its motion for reconsideration, with one exception. University and its counsel may become subject to sanctions if, as the Boston defendants argue, they have been playing 'fast and loose' with the Court." *See* Order on Defendants' Motion to Strike and Motion to Dismiss Amended Complaint, at 7 (D.E.# 73).[9] In this regard, the Boston defendants may be correct in their assessment that, "This case is a sad example of the mischief that occurs when a party attempts to rewrite history to avoid dismissal of its claims." *See* Defendants' reply brief in support of motion for summary judgment, at 1 (D.E.# 92). Now that the proceedings have been concluded, the Boston defendants may choose to pursue their contention in the form of a motion for sanctions, as contemplated in the Court's earlier order.

### CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED that the Boston defendants' motion for summary judgment is GRANTED as to all four counts of the amended complaint.

In accordance with Fed.R.Civ.P. 58, the Court will enter summary final judgment by separate order.

---

**9.** It could be said that University has ended up in a worse overall posture, since its promissory estoppel claim, which had initially survived, has also been eliminated.